UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
LANE HOLDINGS, INC.,

                               Plaintiff,                       **REPORT AND**
                                                                           **RECOMMENDATION**
              -against-                      17-CV-6631 (SJF) (ARL)

KLIGER-WEISS INFOSYSTEMS INC.,

                               Defendant.
------------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

      Plaintiff Lane Holdings, Inc. ("Lane" or "Plaintiff") brings this action against defendant Kliger-Weiss Infosystems Inc. ("KWI" or "Defendant") seeking damages for breach of contract and a declaratory judgment. Before the Court, on referral from District Judge Feuerstein, is Plaintiff's motion for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56 seeking dismissal of Defendant's counterclaims. For the reasons stated below, the Court respectfully reports and recommends that the motion be granted, in part, denied in part.

## BACKGROUND

### I.    Factual Background

      The following facts are drawn from the parties' Local Rule 56.1(a) Statements and are uncontested unless otherwise noted.

      Lane was founded in 1992 and is a retailer of lingerie, romantic gifts, and other adult oriented merchandise. Pl. Rule 56.1 Stmt. ¶ 1. Lane operates thirty-five brick and mortar retail locations across the Midwest and also sells its products online. *Id*. at ¶ 2. KWI was formed in 1985 and sells hardware and software systems to retailers. *Id.* at ¶ 4. Sam Kliger is the President of KWI. Def. Rule 56.1 Stmt. ¶ 91. KWI sells three different types of software, Enterprise Resource Planning ("ERP"), point of sale ("POS") and e-commerce. *Id*. at ¶ 5. In 2008, the

parties entered into an agreement pursuant to which Lane agreed to "purchase POS registers and [KWI] will provide computerized management information services" (the "2008 Agreement"). *Id*. at 7. The 2008 Agreement was to "run for a minimum thirty-six (36) months from the first store going live (first month of store billing), after thirty-six (36) months this Agreement may be terminated by either party upon one hundred and twenty (120) days written notice." *Id*. at ¶ 9. The 2008 Agreement provides that it is "the entire agreement of the parties and may only be modified in writing signed" by both parties. *Id*. at ¶ 10.[1]

Lane paid approximately $15,000 per month for the technology during the term of the 2008 Agreement. Def. Rule 56.1 Stmt. ¶ 99. The term of the contract, however, is in dispute. Plaintiff contends that it used KWI's business services from 2008 through 2017 pursuant to the 2008 Agreement and that in October 2017 it terminated the agreement by giving 120 days written notice. Pl. Rule 56.1 Stmt. ¶¶ 11, 69. Defendant, on the other hand argues that the 2008 Agreement was amended in 2015 and services were provided pursuant to separate agreement entered between the parties in 2015 which had a five-year term. Def. Mem. at 1.

Throughout much of 2015 the parties were negotiating for the purchase of an mPOS systems that would allow Lane to become chip and pin compliant by October 2015. Pl. Rule 56.1 Stmt. ¶¶ 14-27. The parties disagree about the specific details of the negotiations but do agree that in September 2015 a final agreement was forwarded to Lane calling for the purchase of certain

---

[1] Defendant states that it cannot admit or deny the statement contained in Paragraph 10, as it does much of Plaintiff's Rule 56.1 Statement. Paragraph 10 of Plaintiff's Statement Pursuant to Local Rule 56.1 includes a relevant citation to the evidence supporting the factual allegations. Defendant's response amounts to a legal argument which is impermissible in any Rule 56.1 Statement and is to be disregarded. *See Sattar v. U.S. Dep't of Homeland Sec.*, 669 F. App'x 1, 3 (2d Cir. 2016) ("Rule 56.1 statements are statements of fact rather than legal arguments") (quotations omitted); *Congregation Rabbinical Coll. of Tartikov, v. Vill. of Pomona*, 138 F. Supp. 3d 352, 394 (S.D.N.Y. 2015) ("[T]he Court can . . . disregard legal conclusions or unsubstantiated opinions in a Local Rule 56.1 statement.").

2

equipment by Lane. *Id.* at ¶ 27. It is Plaintiff's position that the later agreement, which it refers to as a Statement of Work ("SOW"), provides for a three-store pilot launch of an mPOS system, and then, only if the pilot was successful, would the rollout to Lane's other stores continue. *Id.* at ¶ 39. In addition, according to Plaintiff, "[t]here is no language whatsoever in the SOW expressly incorporating, modifying, altering and or referencing in any way the terms of the [2008 Agreement], which contains a clause requiring any such modification to be expressly spelled out in writing (signed by both parties)." *Id*. at ¶ 35. Defendant, on the other hand, takes the position that Plaintiff was obligated to move forward with the installation of the mPOS in all of its stores, once the three-store initial rollout was completed regardless of the outcome of the three-store roll out. Def. Rule 56.1 Stmt. at ¶ 36. In addition, Defendant argues that the SOW modified the terms of the original 2008 Agreement, by extending its terms for five years, and this modification prevents Lane from terminating the 2008 Agreement. *Id*. at ¶ 39. According to KWI, an additional $6,350 in monthly payments was due beginning in January 2016. Kliger Dec. ¶ 34.

According to Plaintiff the three-store rollout was a total failure. Plaintiff alleges that the pilot launch in Lane's first store was implemented in November 2015. Pl. Rule 56.1 Stmt. ¶ 52. The next two stores were launched in January 2016. *Id*. at ¶ 55. According to Plaintiff, "the new equipment and software installed by KWI in each of the three pilot stores never consistently worked." *Id*. at ¶ 56. Plaintiff claims that the parties spent the next eighteen months attempting to resolve the issues with the three pilot stores. *Id.* at ¶ 60. KWI disputes Plaintiff's position that the rollout was unsuccessful, arguing that "KWI properly addressed all technical issues that Lane brought to its attention." Def. Rule 56.1 Stmt. ¶ 57. The equipment was never installed in any Lane stores beyond the three "pilot" stores. Pl. Rule 56.1 Stmt. ¶ 67.

On October 31, 2017, Lane sent notice to KWI of its decision to terminate the 2008 Agreement effective April 1, 2018. *Id*. at ¶ 69. On November 2, 2017, KWI wrote to Lane, stating that Lane had no right to terminate the agreement. *Id*. at ¶ 71. This litigation ensued.

## II.     Procedural History

Plaintiff commenced this diversity action on November 14, 2017 asserting claims for breach of contract and seeking a declaratory judgment. ECF No. 1. Simultaneous therewith Plaintiff filed a motion for a Preliminary Injunction and Temporary Restraining Order. ECF No. 5. Judge Bianco issued a temporary restraining order, granted Plaintiff's request for expedited discovery and scheduled a hearing on the motion for a preliminary injunction on November 14, 2017. ECF No. 10. On December 13, 2017, the parties entered into a stipulation whereby KWI agreed to the injunctive relief sought by Lane and agreed not to cease providing services to Lane. ECF No. 32.

In its answer to Plaintiff's amended complaint Defendant filed on February 1, 2018 ("Def. Ans.") KWI asserts four counterclaims. First, Defendant alleges that Plaintiff has breached the SOW by failing to make each of the installment payments required under that agreement. Def. Ans. ¶ 42. Next, for its second counterclaim, Defendant asserts a claim for breach of contract claiming that Plaintiff has failed to make required monthly payments of $6,350 since January 1, 2016 pursuant to the 2008 Agreement, as modified by the SOW. *Id*. at ¶ 49. For its third counterclaim, KWI alleges that Lane anticipatorily breached the 2008 Agreement, as modified by the SOW, by attempting to terminate the 2008 Agreement effective as of April 1, 2018. *Id*. at ¶ 54. Defendant's fourth and final counterclaim asserts a claim for unjust enrichment arising out of Lane's failure to go forward with the project described in the SOW. *Id.* at ¶¶ 58-59.

4

On November 1, 2019, Lane moved for summary judgment seeking dismissal of each of Defendant's counterclaims. In support of its motion for summary judgment, Lane relies upon the Declaration of Edward P. Gilbert in support of Plaintiff's motion for summary judgment, dated, August 2, 2019, attaching exhibits ("Gilbert Dec."), Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment ("Pl. Mem.") and its Rule 56.1 Statement. Defendant opposes the motion, and relies upon the Declaration of Sam Kliger dated October 4, 2019 (Kliger Dec.), the Declaration of Andrew Luskin, attaching exhibits dated October 4, 2019 ("Luskin Dec.") and Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Mem."). By Order dated November 9, 2019, Judge Feuerstein referred Plaintiff's motion to the undersigned for a Report and Recommendation.

## DISCUSSION

### I. Standard of Law

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Puglisi v. Town of Hempstead*, No. 10 CV 1928, 2012 WL 4172010, *6 (E.D.N.Y. Sept. 17, 2012) (quoting *In re Blackwood Assocs., L.L.P.,* 153 F.3d 61, 67 (2d Cir. 1998) and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(c)). In deciding a summary judgment motion, the district court must resolve all ambiguities and draw all reasonable inferences in the light most favorable to the opposing party. *See Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 137 (2d Cir. 1998). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant,

5

summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.*, 95 F.3d 123, 129 (2d Cir. 1996), *cert denied*, 520 U.S. 1228 (1997).

The trial court's responsibility is "limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., L.P.*, 22 F.3d 1219, 1224 (2d Cir. 1994). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]here must exist 'specific facts showing that there is a genuine issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish v. Ferguson*, 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *Celotex,* 477 U.S. at 322). A moving party may obtain summary judgment by demonstrating that little or no evidence may be found in support of the non-moving party's case. "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Marks v. New York Univ.*, 61 F. Supp. 2d 81, 88 (S.D.N.Y. 1999).

"In the context of a contractual dispute, summary judgment may be granted where the contract conveys a 'definite and precise meaning absent any ambiguity' *Seiden Assoc., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992), and under New York law, whether contract language is ambiguous is a question of law properly resolved on a motion for summary judgment." *Cleveland Wrecking Co. v. Hercules Construction Corp.*, 23 F. Supp. 2d 287, 291 (E.D.N.Y. 1998) (citing *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir. 1989) (finding summary judgment "perfectly appropriate" where intent can be ascertained)).

**II.     Analysis**

### A. Defendant's Breach of Contract Counterclaims

Plaintiff contends that it is entitled to summary judgment on Defendant's claims for breach of contract arising out of (1) Lane's failure to go forward with the full 34-store rollout (First Counterclaim), (2) Plaintiff's failure to make monthly payments of $6,350 under the 2008 Agreement since January 1, 2016 (Second Counterclaim) and (2) anticipatory breach of contract arising out of Lane's "attempt" to terminate the 2008 Agreement effective as of April 1, 2018 (Third Counterclaim). Pl. Mem. pp. 16-24. Plaintiff argues that it is entitled to summary judgment because KWI has no damages, that the SOW is a separate agreement from the 2008 Agreement and therefore Lane was entitled to terminate the 2008 Agreement and is not responsible for any additional payments thereunder. *Id*. Defendant, on the other hand, takes the position that pursuant to the SOW, which it refers to as the 2015 Agreement, Lane agreed to a five-year extension of the 2008 Agreement and to go forward with the full 34 store rollout. Def. Mem. at p. 2.[2]

The 2008 Agreement provides that it is governed by New York law. *See* Gilbert Decl. Ex. C (2008 Agreement) at Paragraph 6. The SOW does not contain a choice of law provision. The parties have briefed the issues under New York law, thus the Court will presume that New York law applies to that agreement as well. "Under New York law, 'an action for breach of

---

[2] To the extent Defendant contends that the 2008 Agreement is a master services agreement, see Kliger Dec. ¶ 9, the Court rejects that contention. "A master service agreement is a blanket contract (whether or not so labeled) which covers any kind of work the independent contractor might be requested to perform for the principal and which renews automatically or continues in effect until either party gives notice of termination." *Simar v. Tetra Techs., Inc*., No. 15-CV-01950, 2019 U.S. Dist. LEXIS 33345 (W.D. La. Mar. 1, 2019) (citing *Doucet v. Gulf Oil Corp*., 783 F.2d 518, 526 (5th Cir. 1986)). "Blanket contracts set forth the terms of performance and payment for any and all work and pay the parties might exchange in the future." *Id*. (citation omitted). A master service agreement usually refers to the type of work contemplated but does not identify a determinate time or place of performance. *Id*. (citations omitted). Here, the 2008 Agreement plainly identifies the time and place of performance with respect to the services provided thereunder and does not contemplate future work. *See* Gilbert Dec., Ex. C.

contract requires proof of (1) a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages.'" *Bear, Stearns Funding, Inc. v. Interface Grp.-Nevada, Inc.*, 361 F. Supp. 2d 283, 290 (S.D.N.Y. 2005) (quoting *First Invs. Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir. 1998)). In addition, New York law provides that "the initial interpretation of a contract is a matter of law for the court to decide." *Yafa Jewelry Inc. v. All Those Underwriters Subscribing to Policy of Ins. Numbered 96FA0026180A*, 42 F. Supp. 2d 307, 310 (S.D.N.Y. 1999) (quoting *K. Bell & Assocs. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (2d Cir. 1996)) (internal quotation marks omitted). In its first counterclaim Defendant claims that Lane was obligated to go forward with the entire 34 store rollout, regardless of the outcome at the three pilot stores. In counterclaims two and three Defendant contends that Plaintiff breached the 2008 Agreement, as amended by the SOW.

### B. First Counterclaim

Defendant counterclaims that Lane having failed to go forward with the full 34 store rollout breached the SOW. Plaintiff's assert that "because the three store pilot was a failure, the equipment was never actually rolled out to all of Lane's stores, relieving Lane of any obligation to pay for it." Pl. Mem. at 23. Accordingly, Plaintiff asserts that the Defendant's failed to incur any damages and thus have failed to establish an essential element of their breach of contract claim. Defendant's respond that the "agreement called for KWI to provide and configure its proprietary Technology for all 34 of Lane's stores, with per-unit charges to be paid to KWI each month during the five-year term." Def. Mem. at 2.

"Proof of damages is an essential element of a claim for breach of contract under New York law." *Process Am., Inc. v. Cynergy Holdings, LLC*, 839 F.3d 125, 141 (2d Cir. 2016). If KWI


can "demonstrate a genuine issue of fact as to the existence of actual damages resulting from the breach of contract, then summary judgment . . . is inappropriate even if the precise amount or extent of the damages is still somewhat uncertain." *V.S. Int'l, S.A. v. Boyden World Corp.*, No. 90-CV-4091, 1993 U.S. Dist. LEXIS 2586, 1993 WL 59399, at *7 (S.D.N.Y. Mar. 4, 1993). In opposition to Plaintiff's motion, Defendant presents a declaration from its president, Sam Kliger, which Plaintiff argues is contradicted by his deposition testimony. Pl. Reply Mem. at 5. A self-serving affidavit from its president to counter Plaintiff's damages challenge would be insufficient to defeat summary judgment. *See Deebs v. Alstom Transp., Inc.,* 346 F. App'x 654, 656 (2d Cir. 2009) (summary order) (plaintiffs' evidence held insufficient to defeat summary judgment when it consisted solely of self-serving testimony unsupported by admissible evidence); *Maier-Schule GMC, Inc. v. Gen. Motors Corp. (GMC Truck & Bus Grp.),* 154 F.R.D. 47, 57 (W.D.N.Y. 1994). Defendant's reliance upon the language of the SOW, however, is persuasive. The SOW provides that, at the very least, it includes "reviewing business requirements, reviewing the products, identifying hardware prerequisites, defining and finalizing the processes, installation, testing, training and preparing for 'Go-Live.'" Gilbert Dec., Ex. D at 6. These services go beyond the mere provision of hardware and at this juncture are sufficient to defeat summary judgment on the basis of a failure to show any damages.

In addition, the Court notes that much of Plaintiff's argument in this regard misses the mark. Plaintiff argues that KWI has not suffered damages because it was not obligated to go forward with the 34-store rollout. This argument goes to the heart of Defendant's breach of contract claim and Plaintiff has not moved for summary judgment on this basis. The Court's analysis is limited to whether, assuming a breach of contract has occurred, the element of damages has been

9

met. As discussed above, the Defendant has provided sufficient evidence of damages to satisfy this element.

Accordingly, the undersigned respectfully recommends that Plaintiff's motion for summary judgment to dismiss Defendant's first counterclaim based on a failure to establish damages be denied.

### C. Second and Third Counterclaims - Amendment or Modification of the 2008 Agreement

Plaintiff also argues that the SOW is not an addendum to the 2008 Agreement and therefore Defendant's counterclaims seeking to recover amounts due pursuant to the SOW's alleged five-year extension of the 2008 Agreement and Defendant's claim for anticipatory breach of the 2008 Agreement must both be dismissed. Defendant's response is that the last page of the SOW itself is the addendum to the 2008 Agreement.[3] Kliger Dec. at ¶ 30.

"Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous." *Lucente v. International Business Machines Corp.*, 310 F.3d 243, 257 (2d Cir. 2002), (citing *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir.1994) (internal quotations omitted); *American Express Bank Ltd. v. Uniroyal, Inc.*, 164 A.D.2d 275,

---

[3] In addition to seeking a grant of summary judgment dismissing Defendant's counterclaims, Plaintiff also seeks a declaration that the SOW did not constitute a five-year extension of the 2008 Agreement. "The only way a motion for declaratory judgment can be construed as 'being consistent with the Federal Rules is to construe it as a motion for summary judgment on an action for a declaratory judgment.'" *FSR, Inc. v. Korsair Holdings*, A.G., 2020 U.S. Dist. LEXIS 55498 (quoting *Int'l Bhd. Of Teamsters v. E. Conference of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)). Here, Plaintiff's Second Cause of action is for a declaratory judgment "declaring that Lane has properly terminated the Agreement, effective April 1, 2018 and that KWI is required to supply service to the System until that date." Am. Compl. ¶ 124. One element of this claim is a determination that the SOW was not an extension of the 2008 Agreement. Thus, Plaintiff's motion will be construed as one for partial summary judgment and considered together with its motion on Defendant's counterclaims.

10

277, 562 N.Y.S.2d 613, 614 (if the parties' intent is unambiguously conveyed in the plain meaning of the agreements, then interpretation is a matter of law that may be resolved by summary judgment or dismissal), appeal denied, 77 N.Y.2d 807, 569 N.Y.S. 2d 611, 572 N.E.2d 52 (1991).  The threshold determination as to ambiguity is one of law based solely upon the court's reading of the terms at issue.  *See United States Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569, 571 (2d Cir. 1991); *Care Travel Co. v. Pan American World Airways*, 944 F.2d 983, 988 (2d Cir. 1991).  A court will deem contract language unambiguous when "it has 'a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion.'"  *Care Travel Co.*, 944 F.2d at 988 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)); see also *Sayers v. Rochester Tel. Corp. Supplemental Memt. Pension Plan*, 7 F.3d 1091, 1095 (2d Cir. 1993).  If the relevant contract terms are determined to be unambiguous, the court may construe the legal meaning of those terms without resort to extrinsic evidence.  *Care Travel Co.,* 944 F.2d at 988; *Metropolitan Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990).  "A contract, however, is not ambiguous merely because the parties urge different interpretations in the litigation."  *Id*. at 311 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989) (internal quotation marks omitted).  "The court is not required to find the language ambiguous where the interpretation urged by one party would strain the contract language beyond its reasonable and ordinary meaning."  *Id*. (internal quotation marks, citation, and alterations omitted).

Generally, "[a] contract addendum is an agreed-upon addition signed by all parties to the original contract. It details the specific terms, clauses, sections and definitions to be changed in the original contract but otherwise leaves it in full force and effect." *See*

Lawdictionary.org/article/writing-a-contract-addendum. The mere reference to an addendum in the SOW does not convert the SOW into the addendum. The only language in the SOW which can be reasonably construed to be a reference to the 2008 Agreement appears at page five and states "[t]he above pricing is based on Lovers Lane signing an addendum for a five (5) year extension to the KWI Agreement." While the KWI Agreement is nowhere defined in the SOW one can presume it is a reference to the 2008 Agreement. The SOW makes no reference to provision 9 of the 2008 Agreement which governs its termination. Indeed, there is no other mention of the 2008 Agreement anywhere in the SOW. As argued by the Plaintiffs and as is clear from the terms of the SOW, it simply contemplates that the price of any services rendered by the defendant under the SOW would become fixed if the plaintiff executed a 5 year addendum (extension) to the 2008 contract.

"A subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345 (DAB), 2007 U.S. Dist. LEXIS 25850, at* 18 (S.D.N.Y. Mar. 29, 2007)(citing *Globe Food Services Corp. v. Consolidated Edison Co. of New York, Inc.*, 184 A.D.2d 278,278 (1st Dep't 1992) (holding that a later contract containing the phrase "this contract shall replace all prior agreements" was not sufficiently definitive to supersede a particular earlier contract). "In order for the court to determine whether or not a particular provision is superseded by a provision in a subsequent contract, the court should consider whether there is an integration and merger clause that explicitly indicates that the prior provision is superseded, whether the two provisions have the same general purpose or address the same general rights, and whether the

12

two provisions can coexist or work in tandem." *Medtech Prods. v. Ranir*, LLC, 596 F. Supp. 2d 778, 813 (S.D.N.Y. 2008), (citing <u>Creditsights</u>, 2007 U.S. Dist. LEXIS 25850, 2007 WL 943352, at *7-9 (finding the initial agreement not superseded by a subsequent agreement because, although the subsequent agreement had an integration and merger clause, the merger clause did not indicate an intent to revoke the prior agreement, and the agreements addressed different rights and served dissimilar purposes).

The 2008 Agreement entered by the parties contains a clause stating that it is "the entire agreement of the parties and may only be modified in writing signed" by both parties. Pl. Rule 56.1 Stmt. ¶ 10. "As a general rule, where a contract has a provision which explicitly prohibits oral modification, such clause is afforded great deference." *Healy v. Williams*, 30 A.D.3d 466, 467, 818 N.Y.S.2d 121 (2d Dept. 2006) (citations omitted). The SOW does not contain an integration clause and as noted above does not specifically reference the 2008 Agreement or any provision therein. The Court therefore concludes that the term addendum as used in the SOW unambiguously refers to a possible agreement extending the terms of the 2008 Agreement which was never ever entered by the parties.[4]

Accordingly, the undersigned respectfully recommends that the Court grant Plaintiff's motion for partial summary judgment on its claim for a declaratory judgment, and grant Plaintiff's motion for summary judgment on Defendant's second and third counterclaims based upon a finding that the term of the 2008 Agreement was not extended by the SOW.

---

[4] Because the Court has concluded that the SOW is unambiguous with respect to the requirement that an addendum to the 2008 Agreement was needed to extend the term of the 2008 Agreement, the Court has not addressed Plaintiff's argument regarding *contra proferentum*.

### D. Defendant's Counterclaim for Unjust Enrichment

Defendant's fourth counterclaim alleges that Lane has been enriched by its receipt and use of, and access to, the Advanced Technology, including the Cloud 9 Mobile Platform, and the preferred pricing KWI offered Lane for the Advanced Technology. Def. Ans. ¶ 58. Plaintiff argues that this counterclaim should be dismissed because it is duplicative of Defendant's breach of contract claim and, even if this Court were to dismiss Defendant's breach of contract claims, Defendant has not alleged that Lane was enriched. Pl. Mem. at 24. Defendant's only response, contained in a footnote to the Preliminary Statement of its memorandum, is that this counterclaim should proceed because Plaintiff is arguing that the SOW is not binding with respect to the five-year extension and the sale of the technology for all stores.

"In order to succeed on a claim for unjust enrichment under New York law, a plaintiff must prove that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Diesel Props S.R.L. v. Greystone Business Credit II LLC*, 631 F.3d 42, 55 (2d Cir. 2011) (internal quotation marks and citations omitted); *Old Republic Nat'l Title Ins. Co. v. Luft,* 52 A.D.3d 491, 491-92, 859 N.Y.S.2d 261 (N.Y. App. Div. 2008). Accordingly, claims for unjust enrichment seek restitution and are based upon theories of quasi-contract. *Matter of Estate of Witbeck,* 245 A.D.2d 848, 666 N.Y.S.2d 315 (N.Y.A.D. 3d Dept, 1997). A quasi-contract is one implied by law, where none in fact exists. *James v. State*, 90 A.D.2d 342, 457 N.Y.S.2d 148 (N.Y.A.D. 4th Dept. 1982). As such, relief on the basis of quasi-contract is only available in the absence of an enforceable written contract governing the same subject matter between the parties. *See Alaska Elec. Pension Fund v. Bank of Am. Corp.*, 175 F. Supp. 3d 44, 64 (S.D.N.Y. 2016) ("New York law provides that a party can pursue alternative claims for unjust enrichment

and breach of contract only '[w]here there is a bona fide dispute as to whether' an express contract governs the subject matter of the disagreement, . . .") (quoting *Marshall v. Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014); *St. John's Univ., New York v. Bolton*, 757 F. Supp. 2d 144, 184 (E.D.N.Y. 2010) ("Unjust enrichment is a quasi-contract claim viable only in the absence of an enforceable agreement between the parties governing the subject matter of the dispute").

Here, there is no question that the 2008 Agreement and the SOW govern the subject matter of the parties' dispute. Accordingly, it is respectfully recommended that Plaintiff's motion for summary judgment with respect to Defendant's counterclaim for unjust enrichment be granted.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF. Any requests for an extension of time for filing objections must be directed to Judge Feuerstein prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed R. Civ. P 72; *Mejia v. Roma Cleaning, Inc.*, No. 17-3446, 2018 U.S. App. LEXIS 28235, 2018 WL 4847199, at *1 (2d Cir. Oct. 5, 2018) ("Plaintiff has waived any objections to the Magistrate's finding" by failing to timely object); *Thomas v. Arn*, 474 U.S.

15

140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).


Dated:   Central Islip, New York
         May 22, 2020

                                              _____s/_____
                                              ARLENE R. LINDSAY
                                              United States Magistrate Judge