# MCLAUGHLIN & STERN, LLP
### FOUNDED 1898

**ANDREW J. LUSKIN**
Partner
aluskin@mclaughlinstern.com

1122 FRANKLIN AVENUE, SUITE 300
GARDEN CITY, NEW YORK 11530
(516) 829-6900
FAX (516) 829-6966
www.mclaughlinstern.com

NEW YORK, NEW YORK
GARDEN CITY, NEW YORK
MILLBROOK, NEW YORK
WESTPORT, CONNECTICUT
WEST PALM BEACH, FLORIDA
NAPLES, FLORIDA

July 17, 2020

**By CM/ECF**

Hon. Sandra J. Feuerstein
United States District Judge
United States District Court
  for the Eastern District of New York
100 Federal Plaza
Central Islip, New York 11722

      Re:   <u>*Lane Holdings, Inc. v. Kliger-Weiss Infosystems Inc.,* 17-cv-6631-SJF-ARL</u>

Dear Judge Feuerstein:

      We represent the defendant Kliger-Weiss Infosystems Inc. ("KWI") in the above-referenced action. This letter constitutes KWI's opposition to the plaintiff's limited objection to the Report and Recommendation of Magistrate Judge Arlene R. Lindsay, dated May 22, 2020 (the "R&R"), with regard to the plaintiff's motion for summary judgment.

      In support of its objection, the plaintiff presents new material consisting of a stipulation of the parties made *after* the plaintiff moved for summary judgment and deposition testimony that was not included in the summary judgment record. We respectfully submit that the Court should reject the new material, especially because (a) the plaintiff could have obtained the material during discovery but did not, and, (b) in any event, the material does *not* demonstrate the plaintiff's entitlement to dismissal of the first counterclaim.

*The Court Should Reject the Plaintiff's New Material*

      In considering the report and recommendation of a magistrate judge, the district judge "'may also receive further evidence or recommit the matter to the magistrate judge

with instructions.'" *Azkour v. Little Rest Twelve, Inc.,* 2012 WL 1026730, at *2 (S.D.N.Y. March 27, 2012) (quoting 28 U.S.C. § 636[b][1]). However, "[c]onsiderations of efficiency and fairness militate in favor of a full evidentiary submission for the Magistrate Judge's consideration, and [the Second Circuit has] upheld the exercise of the district court's discretion in refusing to allow supplementation of the record upon the district court's *de novo* review." *Hynes v. Squillace,* 143 F.3d 653, 656 (2d Cir.), *cert. denied,* 525 U.S. 907 (1998) (citing *Paddington Partners v. Bouchard,* 34 F.3d 1132, 1137-38 [2d Cir. 1994] [finding no abuse of discretion in district court's refusal to consider supplemental evidence]).

"In objecting to a magistrate's report before the district court, a party has 'no right to present further testimony when it offer[s] no justification for not offering the testimony at the hearing before the magistrate.'" *Paddington Partners,* 34 F.3d at 1137-38 (quoting *Pan Am World Airways, Inc. v. International Bd. of Teamsters,* 894 F.2d 36, 40 n.3 [2d Cir. 1990]). *See also Azkour,* 2012 WL 1026730, at *2. Indeed, "attempts to introduce new evidence after the magistrate judge has acted are disfavored." *Caldwell v. Jackson,* 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010). *See also Hubbard v. Kelley,* 752 F. Supp. 2d 311, 312-13 (N.D.N.Y. 2009) ("'In this . . . circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'") (quoting *Illis v. Artus,* 2009 WL 2730870, at *1 [E.D.N.Y. Aug. 28, 2009]).

As this Court has observed, "'absent a most compelling reason, the submission of new evidence in conjunction with objections to the report and recommendations [of a magistrate judge] should not be permitted.'" *Stair v. Calhoun,* 2015 WL 1476454, at *9 (E.D.N.Y. 2015) (Feuerstein, J.) (quoting *Housing Works v. Turner,* 362 F. Supp. 2d 434, 438 [S.D.N.Y. 2005]). In *Stair,* Your Honor quoted the "well-reasoned" (at *9) words of the Honorable Lewis A. Kaplan of the Southern District of New York:

> While there may be cases in which the receipt of further evidence is appropriate, there are substantial reasons for declining to do so as a general matter. First, permitting such piecemeal presentation of evidence is exceptionally wasteful of the time of both the magistrate and district judges, the former having been compelled to write an arguably useless report based on less than the universe of relevant evidence and the latter being deprived of the benefit of the magistrate judge's considered view of the entire record. Second, opposing parties would be put to the burden of proceedings

> which, to a considerable degree, would be duplicative. Third, there would be instances in which parties would be encouraged to withhold evidence, particularly evidence which might be embarrassing as well as helpful on the merits, in the expectation of using it before the district judge only if they failed to prevail before the magistrate judge on a more abbreviated showing. Finally, the routine consideration of evidence in support of objections which could have been presented before the magistrate judge would reward careless preparation of the initial papers.

*Stair,* 2015 WL 1476454, at *9 (quoting *Morris v. Amalgamated Lithographers of Am., Local One,* 994 F. Supp. 161, 163 [S.D.N.Y. 1998]).

*The Plaintiff has no Valid Excuse*
*for its Untimely Evidentiary Proffer*

The plaintiff asserts in its memorandum of law (the "Plaintiff's Memo") that while its summary judgment motion was *sub judice*, "KWI disclosed new evidence that was not available to Magistrate Judge Lindsay." Plaintiff's Memo, p. 1. The plaintiff contends that the "new evidence" would have "significantly altered" Magistrate Judge Lindsay's recommendation that summary judgment for the plaintiff dismissing KWI's first counterclaim should be denied. The plaintiff's position is without merit for several reasons.

The parties' stipulation, dated March 13, 2020 (*see* Exhibit 3 to the Declaration of Edward P. Gilbert, dated June 19, 2020 [the "Gilbert Decl."]), resulted from Magistrate Judge Lindsay's order on the plaintiff's letter motion to compel discovery (ECF No. 62), submitted on November 19, 2019, more than seven months *after* discovery closed and *after* the plaintiff served its summary judgment motion on August 2, 2019. KWI opposed the motion (ECF No. 63), demonstrating, among other things, that:

- During a July 9, 2019 conference before the Court, the plaintiff's counsel mentioned nothing about open discovery, instead announcing the plaintiff's intention to move for summary judgment dismissing KWI's counterclaims.

- A briefing schedule was set, and the summary judgment phase of the case commenced when the plaintiff served its summary judgment motion on August 2, 2019 (ECF No. 55).

- While preparing opposition papers, on September 17, 2019, KWI's counsel received a letter from the plaintiff's primary (Michigan) counsel, requesting two categories of documents, which he had requested during the deposition of KWI's principal on March 7, 2019.

- The letter arrived more than five months after the close of discovery (March 31, 2019), and more than one month after the plaintiff moved for summary judgment.

- Although KWI had no obligation to provide further discovery, KWI produced several documents in response to the second of the plaintiff's two enumerated requests.

- Separate and apart from the plaintiff's untimely request for additional discovery, plaintiff's local counsel requested additional information, beyond the scope of the requests in the September 2019 letter from the plaintiff's Michigan counsel.

- A series of e-mail exchanges ensued, and KWI attempted to satisfy the plaintiff's request for additional information, despite the lack of any obligation on the part of KWI, as discovery was closed.

- Despite KWI's attempt to oblige the plaintiff with supplemental information, the plaintiff moved by letter dated November 19, 2019 (ECF No. 62), to compel additional discovery that was purportedly responsive to some or all of four broad categories of document requests that the plaintiff had served during discovery.

In its opposition to the plaintiff's motion to compel discovery (ECF No. 63), KWI urged that the duty to supplement discovery does not entitle a litigant to reopen discovery simply to demand material that the litigant could have sought timely. KWI pointed out that the plaintiff could have asked KWI's witnesses at their respective depositions about the disposition of the subject iPads. The responses would have informed the plaintiff about the existence of any documents that KWI might not have produced. After failing to ask such questions at deposition, the plaintiff's insistence on a declaration from Sam Kliger, KWI's principal – effectively a testimonial substitute for questions that were not posed at the witness' deposition – demonstrated that the plaintiff sought information that it could have requested when Mr. Kliger submitted to oral deposition.

*The Parties' Stipulation Made at the
Direction of Magistrate Judge Lindsay*

Magistrate Judge Lindsay acknowledged in her December 5, 2019 order (ECF No. 64; copy appears as Exhibit 2 to the Gilbert Decl.) that discovery had concluded as of March 31, 2019, *and would not be reopened*. Instead, the order simply directed the parties "to enter an appropriate stipulation which addresses the question of whether the ipads/hardware in question were resold, reused or disposed of in a fashion which reduces [KWI's] damages." Gilbert Decl., Ex. 2.

*The Parties' Stipulation Does
not Support the Plaintiff's Position*

Sorely misconstruing the parties' ensuing stipulation (*see* Gilbert Decl., Ex. 3; the "Stipulation"), the plaintiff contends mistakenly that KWI cannot prove damages for the contract breach alleged in its first counterclaim. The position is manifestly baseless and easily refuted.

The plaintiff mischaracterizes the deposition testimony of KWI's principal, Sam Kliger, and ignores Mr. Kliger's summary judgment declaration, dated October 4, 2019 (the "Kliger Decl."). Mr. Kliger demonstrated in his declaration that:

- KWI's cloud-based mobile technology includes its proprietary software, configured hardware, and related computerized management information services (the "KWI Technology"). *See* Kliger Decl., ¶ 2.

- KWI charges its clients in different ways for the KWI Technology, but most often it charges upfront installment payments (which KWI bills as payment for equipment, licenses, and installation), plus additional monthly fees during the term of a contract. KWI breaks up its pricing to cover not just the equipment that it provides to its customers, but also the technology development, maintenance, and update costs that KWI incurs on a continuing basis. *See* Kliger Decl., ¶ 3.

- The parties' 2015 Statement of Work ("SOW"), at issue here, provided for upfront installment payments (totaling $285,525) for the KWI Technology – *i.e.,* the KWI "Cloud 9 Mobile Platform" – and the equipment necessary to outfit all of Lane's 34 stores with a specially configured Cloud 9 Mobile Platform. *See* Kliger Decl., ¶ 13.

- The KWI Technology includes thousands of "switches" that can be configured by KWI's software engineers to have the KWI Cloud 9 Mobile Platform perform in very specific ways according to each customer's needs and specifications. Although the KWI Technology is initially engineered as a standard software product, KWI usually devotes substantial time to configure the platform to the unique needs of its customers. This is precisely how KWI worked with the plaintiff in implementing the Cloud 9 Mobile Platform for the plaintiff's needs and business methods. *See* Kliger Decl., ¶ 14.

- KWI had to devote hundreds of hours and significant resources to configure the Cloud 9 Mobile Platform for the plaintiff's specific needs, while also committing to the additional infrastructure necessary to accommodate the plaintiff's Point of Sale (POS) traffic. *See* Kliger Decl., ¶ 17.

- The upfront installment payments set out in the SOW ($285,525) were linked to scheduled equipment, but in fact this pricing also accounted for the plaintiff's purchase of the KWI Technology. In other words, the pricing for the KWI Technology was spread out within the hardware pricing. *See* Kliger Decl., ¶ 34.

In his summary judgment declaration, Mr. Kliger was abundantly clear that the upfront contract payments of $285,525 encompassed upfront payment for the KWI Technology, although the payments were itemized by reference to hardware and software licenses. As KWI's evidentiary proffer showed, the SOW did not memorialize, or bind the plaintiff, solely to a hardware purchase. The transaction involved principally the sale of technology. Only a portion of the contractually prescribed installment payments totaling $285,525 encompassed the cost to the plaintiff of the equipment itself.

The Stipulation addresses *only* the ultimate disposition of the iPad and iTouch units scheduled in the SOW. The stipulation states (at ¶ 2) that "[t]he parties assert opposing positions as to whether the stipulated facts reduce KWI's alleged damages." The Stipulation does not address the upfront installment payments (totaling $285,525) set out in the SOW. The Stipulation also does not refer to any allocation of the $285,525 as between hardware (equipment) and the KWI Technology (which includes the proprietary software and configured hardware). Yet the plaintiff contends that KWI's lack of re-sale of the iPad and iTouch units somehow eliminates the *entirety* of KWI's damages based on a contract price that encompassed software licenses and technology, in addition to the iPads and iTouch units, which KWI configured for the plaintiff.

The plaintiff does not disclose that in response to its untimely (post-discovery and post-summary judgment) request, KWI produced invoices for bulk iPad and iTouch

purchases that KWI made around the time of the SOW. The invoices demonstrate that the cost of iPads and iTouches in 2015 and 2016 were hundreds of dollars below the unit pricing in the SOW. This is precisely because the unit pricing of the iPad and iTouch units in the SOW *included the cost of the KWI Technology.* KWI is prepared to supplement the record with the said invoices to confirm the foregoing. KWI, however, believes that without a direction from the Court, supplementation of the summary judgment record would not be proper.

Finally, the Stipulation does not address the reason that KWI was unable to re-sell the iPad and iTouch units that it purchased for the plaintiff pursuant to the SOW. At trial, KWI will demonstrate that the equipment purchases were near the time of the parties' execution of the SOW in October 2015. But the plaintiff did not terminate the parties' relationship until its notice approximately two years later. Mr. Kliger is prepared to testify at trial that by the time the plaintiff gave its termination notice, the Apple products that KWI had purchased for the plaintiff no longer were the current product generation, and therefore could not be resold as new product. For this reason, KWI put these units into its "equipment depot," and used the equipment, as stated in the Stipulation. Whether or not KWI could have realized any actual dollar value for the equipment at that point is an issue of fact on the plaintiff's defense that KWI failed to mitigate its damages.

In sum, KWI can easily prove its damages by reference to the unpaid portion of the upfront payments prescribed in the SOW. The plaintiff bears the burden of establishing its mitigation-of-damages defense. *See, e.g., Air Et Chaleur, S.A. v. Janeway,* 757 F.2d 489, 494 (2d Cir. 1985) ("the district court was also correct in holding that defendant bore the burden of introducing evidence to prove that plaintiffs could have lessened their damages"); *Cornell v. T.V. Dev. Corp.,* 17 N.Y.2d 69, 74 (1966) ("While the plaintiff is required to mitigate damages upon breach, the burden of proving a lack of diligent effort to mitigate damages is upon the defendant"); *Coastal Power Int'l, Ltd. v. Transcontinental Capital Corp.,* 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998), *aff'd,* 182 F.3d 163 (2d Cir. 1999) ("the defense of failure to mitigate requires the defendant to establish not only that the plaintiff unreasonably failed to mitigate, but that reasonable efforts would have reduced the damages").

At bottom, as Magistrate Judge Lindsay found, the services provided and at issue in the first counterclaim, "go beyond the mere provision of hardware and at this juncture are sufficient to defeat summary judgment on the basis of a failure to show any damages." R&R, p. 9. The R&R thus acknowledges that the payments prescribed in the SOW encompass a sale of equipment *and services*. KWI's first counterclaim quantifies its damages for the equipment and services based on the pricing in the SOW. The

plaintiff's mitigation defense will require *the plaintiff* to prove that KWI unreasonably failed to mitigate *and* that reasonable mitigation efforts by KWI would have reduced its damages. The issue is not determinable summarily as a matter of law, especially on this record. *See, e.g., Fisher v. First Stamford Bank & Trust Co.,* 751 F.2d 519, 524 (2d Cir. 1984) ("Ordinarily, it is left to the jury to determine whether plaintiff in the exercise of ordinary care and at reasonable expense could have mitigated [its] damages"). Even if the plaintiff were to establish its mitigation defense, the defense would apply only to the minority portion of the upfront SOW payments allocable to the hardware, and only to the extent that KWI could have realized any value for the then outdated hardware.

*KWI is Entitled to Notice if the Court is Inclined
to Consider the Plaintiff's Supplemental Material*

If the Court, in its exercise of discretion, is inclined to accept the plaintiff's "further evidence" (28 U.S.C. § 636[b][1]), KWI should have notice of the Court's intention to consider the new material, and to supplement the summary judgment record. *See, e.g., Hynes,* 143 F.3d at 656 ("the parties agree that the court erred in failing to give [the plaintiff] notice of its intention to consider this supplemental evidence in resolving the objections to the Magistrate Judge's Report–Recommendation"). Consequently, if this Court does intend to accept the plaintiff's proffer of new evidentiary material (the Stipulation and deposition testimony of Gary Brill, which the plaintiff did not proffer in its summary judgment papers), then KWI respectfully requests notice of such intention and an opportunity to expand the summary judgment record as appropriate to address the plaintiff's new material.

## Conclusion

For the foregoing reasons and as set forth in KWI's earlier submission (ECF No. 69), the Court should (i) adopt the R&R insofar as it recommends denial of summary judgment dismissing KWI's first counterclaim, and (ii) reject the R&R insofar as it recommends summary judgment for the plaintiff dismissing KWI's second counterclaim.

Respectfully,

*Andrew J. Luskin*
Andrew J. Luskin

cc: Edward P. Gilbert, Esq. (by CM/ECF)

{N0197118.3}